**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

ERVIN A. BABALOLA,

     Plaintiff,

v.                                    CASE NO: 8:14-cv-101-T-26MAP

WAL-MART STORES EAST, LP, d/b/a
Wal-Mart Supercenter Store #1390,

     Defendant.

_____/

**O R D E R**

Before the Court is Defendant Wal-Mart Stores East, LP's Second Amended

Motion for Summary Judgment with attachments and Statement of Undisputed Facts

(Dkt. 46), a video (Dkt. 48), and Plaintiff's Response with attachments.[1] (Dkt. 52). After

careful consideration of the submissions of the parties, the Court concludes the motion

should be denied.

**BACKGROUND**

Both parties agree that on July 12, 2012, Plaintiff was a business invitee[2] at the

Wal-Mart Supercenter on US Highway 19 North in Pinellas County, Florida (Wal-Mart).

---

[1] Although Defendant was granted leave to file a Reply, none has been filed. See docket 55.

[2] See docket 46-1, para. 2.

The only other undisputed facts are that Plaintiff walked at 2:00 a.m. to the north end of the store to retrieve ground chuck from a refrigerated meat section located on a wall of the store.[3]  According to Plaintiff, he tripped when his foot caught on plastic[4] that had been removed by employees from a pallet full of stock, which had been left in a space between the pallet and a freezer, or bunker, that sits out on the floor of the store away from the wall.  Plaintiff stresses that he thought it was safe to step on the pallet, and that he did not see anything that would cause him to fall.[5]  According to Wal-Mart, it owed no duty to warn Plaintiff of the open and obvious condition that caused him to trip.  Wal-Mart contends there was an alternative route to the refrigerated meat section, which Plaintiff could have taken.  Plaintiff testified at his deposition that he used the only way possible to reach the meat because the aisles were roped off.[6]  Plaintiff argues that Wal-

---

[3]  Plaintiff testified at deposition that he had frequented the store five or six times before the day of the incident.  See docket 46, p. 75; docket 52-2, p. 68.  He has also returned to store three or four times since the incident.  See docket 52-2, p. 68.

[4]  The assistant manager refers to the plastic as "shrink-wrap" in his deposition. See docket 52-1, pp. 25, 26, 48, 49, 53.

[5]  See docket 46, p. 84.

[6]  Plaintiff testified, "Rather than taking a chance going the other way, you know – like I said, it was netted off – I would have had to go about two aisles down further to come back up, but I had to go two aisles that way and come back down."  See docket 46, p. 77.  He answered affirmatively that the meat aisle was blocked off from both directions.  See docket 46, p. 78.  He then admitted that "[o]n the left, I could have gone down two aisles .  .  . take a right, and I could come back down to the chuck."  See docket 46, p. 81.  Later, he again testified, "[I]t wasn't an opening anywhere else, because those were netted off between the meats until – and that was the only spot that was open for you to go through, unless you go down to where, I think, the paper towel, toilet paper

Mart, under the circumstances of this case, failed to fulfill its duty of ordinary care in maintaining its premises in a reasonably safe manner, as well as its duty to warn of or disclose the dangerous condition.

Both parties rely on the video.  While the video captures the accident, the vantage point of the camera is such that the exact juxtaposition of the plastic, the pallet, and the freezer on the floor is not readily discernible.  It is apparent that he took the shortest path to the refrigerated case against the wall.  It is unclear whether there was another unobstructed path to the wall.  The video shows people, presumably Wal-Mart employees, walking freely in front of the refrigerated wall and entering from other directions than the path chosen by Plaintiff.  Almost immediately after the incident, two employees begin talking with Plaintiff, and Plaintiff walks off with them.  Fewer than five minutes after the incident, the assistant manager walks to the place where the incident occurred, and the assistant store manager picks up the shrink-wrap from the floor.  Plaintiff returns to the scene of the incident with an employee, and then follows the assistant store manager away from the area and outside the view of the camera.

## SUMMARY JUDGMENT STANDARD

Summary judgment is properly granted where there is no genuine dispute regarding a material fact.  Fed.R.Civ.P. 56(a).  On a motion for summary judgment, the court must review the record, and all its inferences, in the light most favorable to the

---

or something, and then you come back up from there."  See docket 52-2, p. 98.

nonmoving party.  See United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).  Neither credibility determinations nor weighing the evidence may play any role in summary judgment proceedings.  See Reeves v. Sanderson Plumbing Prods, Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed. 2d 105 (2000); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  The Court may not decide a genuine issue of fact at the summary judgment stage.  See Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990).

## DISCUSSION

In Florida, negligence must be established by a preponderance of evidence that (1) the defendant had a duty to protect the plaintiff, (2) the defendant breached that duty, and (3) the defendant's breach was the proximate cause of the plaintiff's injuries and resulting damages.  See Cooper Hotel Serv., Inc. v. MacFarland, 662 So.2d 710, 712 (Fla. 2d DCA 1995).  Wal-Mart argues that the only dispute arises under the second part of the proof– whether Wal-Mart breached its duty to Plaintiff.   The duties owed by a landowner to a business invitee include (1) using reasonable care in maintaining its premises in a reasonably safe condition, and (2) giving the invitee warning of concealed perils that are or should be known to the landowner and *that are unknown to the invitee and cannot be discovered through the exercise of due care*.  See St. Joseph's Hosp. v. Cowart, 891 So.2d 1039, 1040 (Fla.Dist.Ct.App. 2004) (emphasis added); Knight v. Waltman, 774 So.2d 731, 733 (Fla.Dist.Ct.App. 2000).

The duty to warn does not arise unless the landowner's knowledge of the danger is superior to the business invitee's.  See Cowart, 891 So.2d at 1042.  An open and obvious danger is one that can be discovered by the plaintiff through the exercise of ordinary care.  See Cooper Hotel, 662 So.2d at 712.  Case law supports the premise that some conditions are so open and obvious that as a matter of law, they do not give rise to liability as a dangerous condition.  See Taylor v. Universal City Prop. Mgm't, 779 So.2d 621, 622 (Fla.Dist.Ct.App. 2001) (affirming grant of summary judgment to theme park owner where plaintiff stepped on edge of row of tree planters which were open and obvious hazard as matter of law); Crawford v. Miller, 542 So.2d 1050, 1051 (Fla.Dist.Ct.App. 1989) (affirming grant of summary judgment to landowner where plaintiff had actual knowledge of "Malibu" lights along sidewalk, she did not have to walk over them on the path to the house, and there was no charge of negligent maintenance); Potash v. Orange Cty. Lake Country Club, Inc., 2005 WL 1073926 (M.D. Fla. 2005) (granting summary judgment for landowner where plaintiff, who did not see tree stump in dried water hazard area while golfing, acknowledged that tree stump was protruding from grass).

Wal-Mart contends that the plastic next to and on the pallet was an open and obvious condition of which Plaintiff was fully aware.  Plaintiff testified that he saw the plastic in the path he took to retrieve the refrigerated ground chuck.  Plaintiff's awareness of the danger, however, "does not negate a defendant's potential liability for negligently permitting the dangerous condition to exist."  Miller v. Slabaugh, 909 So.2d 588, 589

(Fla.Dist.Ct.App. 2005). "[I]t simply raises the issue of comparative negligence and precludes summary judgment." Miller, 909 So.2d at 589. While the pathway covered by plastic appears to be an open and obvious danger of which the Plaintiff was aware, the evidence is not so clear as to whether there was an alternative route Plaintiff could have taken to avoid the danger, and whether reasonable care was exercised in the condition of the area in question while stocking.[7] Having determined that genuine issues of material fact exist regarding maintaining the premises in a reasonably safe condition and whether Plaintiff was comparatively negligent, the Court denies summary judgment.

It is therefore **ORDERED AND ADJUDGED** that Defendant Wal-Mart Stores East, LP's Second Amended Motion for Summary Judgment (Dkt. 46) is **DENIED**.

---

[7] See cases cited by Plaintiff which note the effect of the comparative negligence doctrine on the "patent danger" defense: Tallent v. Pilot Travel Ctrs., LLC, 137 So.3d 616 (Fla.Dist.Ct.App. 2014) (reversing grant of summary judgment in favor of service station owner on factual issue of whether premises was maintained in reasonably safe condition by following clean up procedures with respect to obvious gasoline spill); Miller (reversing grant of summary judgment in favor of landowner on factual issue of whether landowner should have anticipated potential harm, notwithstanding plaintiff's knowledge of the danger); Fenster v. Publix Supermarkets, Inc., 785 So.2d 737 (Fla.Dist.Ct.App. 2001) (reversing grant of summary judgment for supermarket on factual issue of whether store maintained premises in reasonably safe condition in placement of stock cart and whether plaintiff was comparatively negligent).

The Court notes that the state appellate court affirmed the granting of summary judgment in favor of the landowner in Cowart. Cowart involved a factually different scenario. There, a black widow spider was hiding in a hospital gown and bit the plaintiff, but there was no evidence that the hospital had breached its duty of maintaining a reasonably safe premises, and the hospital had no superior knowledge of the existence of the spider thereby triggering a duty to warn. There was no evidence that the hospital could have prevented the lone spider from wandering inside, and there was no evidence of a spider infestation that would warrant additional treatment. The spider did not "enter[] and remain[] in the hospital as a result of the hospital's negligence." Id. at 1042.

**DONE AND ORDERED** at Tampa, Florida, on January 15, 2015.


        s/*Richard A. Lazzara*

**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**


<u>COPIES FURNISHED TO</u>:
Counsel of Record